IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CCP MUSTANG HOLDINGS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 9081 |
| | ) |
| WILLIAM D. ORAND, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff CCP Mustang Holdings LLC's (CCP) motion to dismiss the counterclaim, and motion to strike. This matter is also before the court on Third-Party Defendant Ventas Realty, Limited Partnership (VRLP), and Ventas Realty, Inc.'s (VRI) (collectively referred to as "Ventas") motion to dismiss, and on Third-Party Defendant Timothy Doman's (Doman) and Third-Party Defendant Nicholas Jacoby's (Jacoby) motion to dismiss. For the reasons stated below, the motion to strike is granted and the motions to dismiss brought by CCP and Ventas are granted, and the motion to dismiss brought by Doman and Jacoby is stricken as moot.

## BACKGROUND

VRLP allegedly leases commercial properties and VRI is VRLP's managing partner. In 2012 VRLP allegedly learned that Kindred Healthcare (Kindred), one of VRLP's largest lessees, would not be renewing hundreds of nursing home facility leases. VRLP allegedly then sent out requests for proposals from other nursing home operators, including Vanguard Healthcare, LLC (Vanguard). Vanguard allegedly submitted a proposal to lease and operate 12 nursing homes. The proposal was allegedly refused by VRLP, but in early 2013, after further negotiations, VRLP allegedly agreed to lease the 12 facilities to certain affiliates of Vanguard (Tenants) pursuant to a Master Lease. Financing for the operation of the nursing homes was allegedly obtained from GE Credit Corporation (GECC). A dispute allegedly arose between the Tenants and VRLP, and as part of its resolution VRLP allegedly agreed to guaranty up to $10 million of Vanguard's financial obligation to GECC, which was Vanguard's lender, and agreed to provide $5 million letter of credit to GECC. Those obligations were also allegedly guaranteed by Vanguard. The Master Lease was also allegedly amended to include individual guarantees (Guarantees) by Defendant William D. Orand (Orand) and Defendant Jere Ervin (Ervin) (collectively referred to as "Defendants"). Operational difficulties with the transition of the nursing homes allegedly occurred and VRLP and Tenants allegedly entered into a Termination and Transition Agreement (TTA) and two amendments, under which the Master Lease was terminated and the facilities were transitioned to new operators. Defendants claim that during the negotiations over the TTA, Doman, an executive of

2

VRI, and Jacoby who worked for VRLP, allegedly represented to Defendants that VRLP would release Defendants from the Guarantees once the transition to the new lessees was complete. Defendants contend that it was based on such representations that they allowed the Vanguard affiliates to enter into the TTA.

In 2015, VRLP allegedly assigned its rights under the Guarantees to CCP. The Tenants have allegedly failed to honor their contractual obligations and Defendants have allegedly failed to honor the terms set forth in the Guarantees. CCP has included in its amended complaint a breach of guaranty claim brought against Orand (Count I), and a breach of guaranty claim brought against Ervin (Count II). CCP seeks to recover funds it was required to pay to GECC as part of a settlement with GECC and amounts owed for rent and other payments under the Master Lease.

Defendants have filed a counterclaim and third-party complaint against CCP, VRLP, VRI, Doman, and Jacoby. Defendants contend that Ventas provided them with Kindred financial statements that contained inaccurate information and that Ventas representatives orally agreed at one point to release Defendants from the Guarantees. Defendants include in the counterclaim and third-party complaint breach of guaranty claims brought against CCP, VRLP, and VRI (Count I), breach of contract claims based on an alleged breach of the TTA brought against CCP, VRLP, and VRI (Count II), breach of contract claims based on an alleged breach of a settlement agreement brought against CCP, VRLP, and VRI (Count III), breach of contract claims based on an alleged breach of the TTA brought against CCP, VRLP, and VRI (Count IV), fraud claims brought against VRLP, VP, Doman, and Jacoby

3

(Count V), declaratory judgement claims brought against VRI and CCP relating to the assignment of rights from VRLP (Count VI), breach of the duty of good faith and fair dealing claims brought against VRI, VRLP, and CCP (Count VII), negligent misrepresentation claims based on Kindred financial statements brought against VRI, VRLP, and CCP (Count VIII), and negligent misrepresentations claims based on alleged promises to release Defendants brought against VRI, VRLP, CCP, Doman, and Jacoby (Count IX).

CCP moved to dismiss the counterclaims brought against CCP. VRI, VRLP, Doman, and Jacoby moved to dismiss the claims brought against them in the third-party complaint. Subsequently, the parties entered into a joint stipulation and Defendants agreed to dismiss all claims in Counts III, VI, and IX of the counterclaim and third-party complaint, and to dismiss the fraud claims brought against Doman and Jacoby in Count V. CCP and Ventas now move to dismiss the remaining claims brought against them.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.

2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I. Waiver of Counterclaims, Third-Party Claims, and Defenses

CCP and Ventas argue that Defendants waived all counterclaims and defenses. The court can consider the contents of the Guarantees when adjudicating the instant motion since the documents were referred to in the counterclaim and relates to a central part of Defendants' counterclaim. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)(stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and

are central to his claim")(internal quotations omitted)(quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).

### A. Wavier in Guarantees as to CCP

CCP argues that Defendants waived their right to assert counterclaims in a waiver provision in the Guarantees. The Guarantees included the following waiver provision (Guaranty Waiver):

> GUARANTOR SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT IN ANY ACTION BROUGHT BY LANDLORD AGAINST GUARANTOR UNDER THIS GUARANTY. GUARANTOR SHALL NOT BE ENTITLED TO MAKE, AND HEREBY WAIVES ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY LANDLORD TO ENFORCE [the Master lease] . . . .

(CCP Ex. 1, 2). Under Illinois the terms of a guaranty are "strictly construe[d] . . . in favor of the guarantor, especially when the creditor prepared the guaranty agreement." *S. Wine & Spirits of Illinois, Inc. v. Steiner*, 8 N.E.3d 1065, 1069 (Ill. App. Ct. 2014); *see also TCFIF Inventory Fin., Inc. v. Appliance Distributors, Inc.*, 2014 WL 806961, at *6 (N.D. Ill. 2014)(stating that "[w]hile breach of guaranty and breach of contract claims have different elements, they are closely aligned, with a guaranty enforced according to general contract principles")(internal quotations omitted)(quoting *Gen. Elec. Bus. Fin. Servs. Inc. v. Hedenberg*, 2011 WL 1337105, at *2 (N.D. Ill. 2011)).

6

1. Waiver of Counterclaims in Guarantees

CCP argues that meaning of the Guaranty Waiver is that Defendants waived their rights to bring "*ANY COUNTERCLAIM*" and separately waived their rights to bring "COUNTER CLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT. . . ." (CCP E. 1,2 )(emphasis added). (CCP Reply 8). While that is one possible interpretation of the Guaranty Waiver, as indicated above, under Illinois law, guarantees are strictly construed in favor of the guarantor. *S. Wine & Spirits of Illinois, Inc.*, 8 N.E.3d at 1069. The Guaranty Waiver waiving the right to bring "ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT" can also be read to cover: (1) a counterclaim for set-off, recoupment or deduction of rent, (2) counterclaims for set-off, recoupment or deduction of rent, or (3) claims, such as third-party claims, for set-off, recoupment or deduction of rent. CCP offers no explanation as to why the parties would have decided make a distinction between counterclaims and third-party claims and only limit third-party claims. CCP cites to *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642 (7th Cir. 2010), and *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852 (N.D. Ill. 2016) in support of the application of the last antecedent rule, but such cases did not involve a breach of guaranty claim and constructions were not made in favor of a guarantor. Nor is it even clear from the language in the Guaranty Waiver why the parties decided to specify that it covered "COUNTERCLAIMS" when it already covered any "COUNTERCLAIM." In the instant action, construing the Waiver

7

Provision in Defendants' favor can only result in a conclusion that they did not in the Guaranty Waiver waive their right to file any and all possible counterclaims and a conclusion that the waiver of rights regarding counterclaims and claims is limited to those for set-off, recoupment or deduction of rent. CCP also argues that Defendants are in essence seeking recoupment and a set-off in this case. Defendants' counterclaims, however, include separate legal theories and do not fall within the scope of the Guaranty Waiver.

    2. Waiver of Defenses in Guarantees

CCP also argues that Defendants waived their rights to bring any defenses in the Guarantees. Unlike with the counterclaims, there is no limitation upon the waiver of defenses. Under Illinois law, a party may waive in a guaranty his right to bring any defenses. *See Fife v. mPhase Techs., Inc.*, 2014 WL 7146212, at *9 (N.D. Ill. 2014)(quoting *Chemical Bank v. Paul*, 614 N.E.2d 436, 441 (Ill. App. Ct. 1993) for proposition that "[g]uaranty agreements containing waivers of all defenses . . . have been upheld as validly binding"). It is clear that the instant action is brought against Defendants "under the" Guarantees. The plain language of the Guarantees expressly foreclose Defendants from pursuing a defenses in cases such as the instant action. *See id.* (stating that "[w]here a guaranty is unequivocal, it must be construed according to the terms and language used, as it is presumed the parties meant what the language imports"). Defendants clearly and unequivocally waive their right to raise "ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY

8

LANDLORD. . . ." (CCP E. 1,2 ). There is no indication that Defendants were coerced into agreeing to such a waiver or evidence showing that the did not knowingly and voluntarily agree to the waiver.

Defendants also argue that they should be able to avoid the effect of the waiver, contending that CCP does not have any valid claim under the Guarantees. However, the above language in the waiver does not require CCP to proceed in an action and prevail on the merits of claims before Defendants would be prohibited from presenting a defense. Such a result would render the provision meaningless since the litigation would be resolved before CCP would have an opportunity to bar a defense. CCP has also shown that Ventas' rights under the Guarantees were assigned to CCP.

Defendants next argue that they did not realize when they signed the Guarantees that they would be unable to assert certain defenses in the future. Defendants could have protected themselves against such an eventuality by refusing to accept the above Guaranty Waiver. Nothing in the waiver limited its scope to defenses known to Defendants at the time that the Guarantees were assigned. If Defendants desired to have their options open to pursue potential defenses in the future then they could have chosen not to agree to the waiver provision and dealt with the ramifications relating to GECC that resulted. Instead, they chose to sign the Guarantees with the Guaranty Waiver and enjoyed the benefit of the bargain. Nor is the waiver provision is so broad so as to curtail Defendants' rights to pursue defenses against CCP or other parties for all time. It is limited to action brought to enforce

9

Defendants' obligations under the Guarantees such as the instant action. Defendants are therefore barred from presenting defenses. Therefore, CCP's motion to strike Defendants' affirmative defenses is granted.

Barring Defendants from pursuing counterclaims and defenses does not leave Defendants without recourse in the instant action. CCP will still need to prevail on the merits of its claims in order to recover from Defendants. Several of Defendants' arguments relating to the scope of the Guarantees, whether obligations under the Guarantees have been triggered, and whether obligations under the Guarantees were extinguished are all arguments that can be made when challenging CCP's contention that it can satisfy all of the elements for its breach of guaranty claims.

### B. Waiver in Guarantees as to Ventas

Ventas argues that Defendants agreed to waive third party claims in the Guaranty Waiver, adopting arguments presented by CCP. However, as explained above, the Guaranty Waiver did not extend to all counterclaims. The court also notes that in regard to third-party claims, since the language relating to "SET-OFF, RECOUPMENT OR DEDUCTION OF RENT" immediately follows the reference to "CLAIMS" and clearly applies to third-party claims, the argument for a waiver by Ventas is actually even weaker than the one presented by CCP in regard to counterclaims.

C. Waiver of Counterclaims and Defenses in TTA

CCP and Ventas also argues that even if Defendants did not waive their rights to bring claims, counterclaims, or defenses in the Guaranty Waiver, Defendants waived such rights in the Second Amendment to the TTA. Defendants in signing the "Acknowledgment and Reaffirmation of Personal Guarantors" with the TTA agreed to be bound by the release in the TTA, which was extremely broad and covered all types of claims and defenses, known and unknown. (DE 64: 8, 16, 18). Although Defendants contend they did not intend to sign in their individual capacity, the "Acknowledgment and Reaffirmation of Guarantor" that Defendants each signed makes very clear that they were signing in their individual capacities and continuing their individual liability. (DE 64-1: 16, 18). The release in the TTA thus forecloses the counterclaims and defenses brought against CCP and Ventas.

II. Breach of Guarantee Claims (Count I)

Ventas argues that Defendants have not alleged facts to state valid breach of guarantee claims, contending that Defendants have failed to identify any specific provisions in the Guarantees that were breached. Defendants assert that Ventas failed to release Defendants from the Guarantees, and engaged in other alleged conduct such as failing to preserve collateral and making misrepresentations. (CC/TPC Par. 44). Ventas is correct, however, that Defendants have failed to point to specific provisions of the Guarantees that were breached by such alleged conduct. Defendants have thus failed to provide Ventas with adequate notice of the basis for

11

the breach of guaranty claims. Defendants' conclusory assertion that the Guarantees were breached is a legal conclusion and is not entitled to be accepted as true for the purposes of the instant motion. *See Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017)(explaining that when adjudicating a Rule 12(b)(6) motion, a court accepts "as true the facts alleged in the plaintiffs' consolidated complaint, but not alleged legal conclusions"). The court also notes that the claims set forth in Count I actually appear to be redundant tort claims presented as breach of contract claims and, to the extent that Defendants argue that Ventas failed to cap the amounts owed under the Guarantees, that would be an affirmative defense relating to damages rather than a counterclaim. Therefore, Ventas' motion to dismiss the claims brought against it in Count I is granted. For the same reasons, CCP's motion to dismiss the claims brought against it in Count I is granted.

III.  Breach of TTA Claims (Count II)

Ventas moves to dismiss the breach of TTA claims in Count 2. In Count II Defendants contend that Ventas breached the TTA by engaging in alleged conduct such as failing to provide notice to Defendants of claims, failing to protect collateral, and making misrepresentations indicating that Ventas would release Defendants from the Guarantees. (CC/TPC Par. 51). Defendants again, however, fail to identify specific provisions in the TTA that were breached by Ventas. It is also apparent from a review of the TTA that Defendants were not even parties to the TTA. Thus,

they lack standing to sue for any breaches under TTA. Defendants argue in their response that they can still recover for breaches as third-party beneficiaries of the TTA. A plaintiff that was not a party to a contract can still recover under Illinois law as a third-party beneficiary to the contract by showing that "the contracting parties intended to confer a benefit upon a nonparty to their agreement." *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999)(internal quotations omitted)(quoting *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill.1995)). Defendants have failed to show that they should be deemed third-party beneficiaries as to the TTA. *Quinn*, 168 F.3d at 334 (stating that "Illinois has made it very difficult to prove intent to benefit the third party, because there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties")(internal quotations omitted)(quoting *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991)). Nor is the court required to accept as true the legal conclusion presented in the counterclaim and third-party complaint that Defendants were third-party beneficiaries. *Oakland Police & Fire Ret. Sys.* 861 F.3d at 649.

Defendants identify as a basis for their third-party beneficiary status Section 2.10(b) of the Second Amendment of the TTA (Section 2.10(b)), which Defendants contend provided a condition under which they would be released from the Guarantees. However, as Ventas correctly points out, absent from Defendants' pleadings are an allegation that the conditions in the TTA that would trigger the right to release ever were satisfied. Ventas contends that Defendants did not allege such

facts and cannot allege such facts because Defendants know that the conditions were never satisfied. Therefore, Ventas' motion to dismiss the claims in Count II brought against Ventas is granted. For the same reasons, CCP's motion to dismiss the claims in Count II brought against CCP is granted.

IV. Breach of Oral Agreement and Fraud Claims (Counts 4 and 5)

Ventas moves to dismiss the breach of oral agreement and fraud claims in Counts 4 and 5. The claims in Counts 4 and are premised on Ventas' alleged oral promises and misrepresentations that Ventas was going to release Defendants from the Guarantees. The record shows that Defendants each signed with the second amendment to the TTA an "Acknowledgment and Reaffirmation of Personal Guarantors," acknowledging their continued personal liability. Defendants also acknowledge that Section 2.10(b) provided the conditions upon which they would be released from the Guarantees and Defendants have not alleged that the conditions were met. Although Defendants were not parties to the TTA they agreed in writing to be bound by certain terms in the TTA as if they were parties. (DE 64-1:16).

The TTA is a written agreement with an integration clause and no-reliance provision, and thus allegations as to alleged oral statements in Count 4 cannot control the parties' relationship. (DE 64-1: 11). In regard to the fraud claims in Count 5, the presence of a non-reliance clause does not automatically preclude a fraud claim at the pleadings stage. In *Benson v. Stafford*, 941 N.E.2d 386, 405 (Ill. App. Ct. 2010), which Ventas cites, the court reviewed all evidence at the summary judgment stage

14

and indicated that "[o]ne factor that courts have considered in analyzing justifiable reliance is the presence of a nonreliance clause in a contract between the parties." *Id.* Thus, the fraud claim is not deficient at this juncture based on the non-reliance clause. However, the claims in Count 4 and 5 based on oral statements would be barred under the Illinois Credit Agreements Act (ICAA), 815 ILCS 160/1 *et seq. Comerica Bank v. Nali, Inc.*, 2015 WL 5920787, at *4 (N.D. Ill. 2015)(explaining that 815 ILCS 160/2 of ICAA "bars claims by obligors that are related to a credit agreement, unless that credit agreement is in writing and is signed by the creditor and the debtor"). In addition, Defendants, in agreeing to be bound by the terms in the TTA also agreed to release claims such as those in Counts 4 and 5, known and unknown. (DE 64-1: 8, 16). Therefore, Ventas' motion to dismiss the claims brought against Ventas in Counts 4 and 5 is granted. For the same reasons, CCP's motion to dismiss the claims brought against CCP in Counts 4 and 5 is granted.

V. Breach of Duty of Good Faith and Fair Dealing Claims (Count 7)

Ventas moves to dismiss the breach of duty of good faith and fair dealing claims in Count 7, contending that Defendants have not identified any specific contractual discretion that could support such a claim. Under Illinois law, a covenant of good faith and fair dealing "is implied in every contract absent express disavowal." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 884 (7th Cir. 2000). Pursuant to such a duty, when a party to a contract is provided with "contractual discretion, it must exercise that discretion reasonably and

15

with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties." *Id.*

In the instant action, the breach of duty of good faith and fair dealing claims fail at the outset since Defendants have failed to allege facts showing that they were parties to the relevant agreements or third-party beneficiaries. In addition, Defendants fail to allege facts to show that the duty would be implied in an pertinent agreement. Defendants contend that the Guarantees provided Ventas and CCP with discretion to bring a suit based on a breach of the Guarantees and discretion to collect certain securities. Defendants, however, have failed to specifically identify any specific language in the Guarantees that would confer such discretion on Ventas or that any such discretion is the type that would trigger the implied duty of good faith and fair dealing. The right to bring suit was merely a right to make a choice and was not an obligation for either side of any agreement. Therefore, Ventas' motion to dismiss the claims brought against Ventas in Count 7 granted. For the same reasons, CCP's motion to dismiss the claims brought against CCP in Count 7 is granted.

VI. Negligent Misrepresentation Claims (Count 8)

Ventas moves to dismiss the negligent misrepresentation claims in Count 8. Defendants allege that Ventas made misrepresentations that the financial statements for Kindred were truthful and accurate and Ventas was negligent in ascertaining the accuracy of the information in the financial statements. (CC/TPC 13-88-89). Ventas

argues that the allegations are contrary to statements made in a certain confidentiality agreement (Confidentiality Agreement) signed by Defendants. The Confidentiality Agreement is not specifically referenced in the counterclaim and third-party complaint and Ventas has not shown it to be central to Defendants' claims. The document is thus beyond the pleadings and it is premature at this juncture to consider such evidence. Ventas also makes certain arguments concerning whether they ever represented that the Kindred financial statements were accurate or merely provided them to Defendants. Ventas, in making such arguments, however, is making arguments concerning the merits of Defendants' claims and reaches beyond the pleadings. However, Defendants in signing the "Acknowledgment and Reaffirmation of Personal Guarantors" with the TTA, agreed to release claims such as the negligent misrepresentation claims. Therefore, Ventas' motion to dismiss the claims brought against Ventas in Count 8 is granted. For the same reasons, CCP's motion to dismiss the claims brought against CCP in Count 8 is granted.

## CONCLUSION

Based on the foregoing analysis, CCP's motion to dismiss and motion to strike is granted, and Ventas' motion to dismiss is granted. The motion to dismiss brought by Doman and Jacoby is stricken as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 17, 2017